ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: _3/22/22_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

ASTRAEA NYC LLC,

                Plaintiff,

  - against -

RIVADA NETWORKS, INC.,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

21 Civ. 10493 (LLS)

ORDER

      Plaintiff, Astraea NYC LLC ("Astraea") , a judgment creditor, served a Restraining Notice with Information Subpoena on Schulte Roth & Zabel ("Schulte"), a law firm which represented the defendant at the arbitration hearing that underlies this matter.  The subpoena seeks information in connection with enforcing the judgment against the defendant, and owed to Astraea.  Schulte asserts that it is complying with the restraint, Dkt. No. 25, but moves to quash the Information Subpoena arguing that it seeks confidential or irrelevant information, Dkt. No. 23.

      A judgment creditor, in aid of the execution of the judgment, "may obtain discovery from any person--including the judgment debtor--as provided in these rules or by the procedure of the state where the court is located." Fed.R.Civ.P. 69(a)(2).  That rule says nothing about discovery from the debtor's law firm.

1

Under New York State law, "the judgment creditor may compel disclosure of all matter relevant to the satisfaction of the judgment, by serving upon any person a subpoena . . .". N.Y.C.P.L.R. § 5223. "Any person" would not ordinarily be taken as including "any law firm," nor does it say "or that person's lawyers." Astraea argues that information about Schulte's representation of Rivada and information about financial matters, like payments, sources of payments, assets held, indebtedness, are not matters of privilege and thus seeks to compel Schulte's compliance.

Astraea depends on the words "any person," but those rules have exceptions. There are special policies which traditionally prevent their applications to relationships such as doctor and patient, husband and wife, lawyer and client, priest and penitent. Those persons may not be compelled to reveal matters learned in the course of their relationship. Courts are also rightly solicitous of time and work demands on high executives: they are not immune from inquiry, but interrogation of them is regarded as only a last resort.

The Supreme Court of the United States stated in Upjohn Co. v. United States, 449 U.S. 383, 389 (1981):

> The attorney–client privilege is the oldest of the privileges for confidential communications known to the common law. 8 J. Wigmore, Evidence § 2290 (McNaughton rev. 1961). Its purpose is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice. The privilege recognizes that sound legal advice or advocacy serves public ends and that such advice or advocacy depends on the lawyer's being fully informed by the client. As we stated last Term in Trammel v. United States, 445 U.S. 40, 51, 100 S.Ct. 906, 913, 63 L.Ed.2d 186 (1980): "The lawyer–client privilege rests on the need for the advocate and counselor to know all that relates to the client's reasons for seeking representation if the professional mission is to be carried out." And in Fisher v. United States, 425 U.S. 391, 403, 96 St.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976), we

2

> recognized the purpose of the privilege to be "to encourage
> clients to make full disclosure to their attorneys." This
> rationale for the privilege has long been recognized by the
> Court, see Hunt v. Blackburn, 128 U.S. 464, 470,
> 9 S.Ct. 125, 127, 32 L.Ed. 488 (1888) (privilege "is
> founded upon the necessity, in the interest and administration
> of justice, of the aid of persons having knowledge of the
> law and skilled in its practice, which assistance can only be
> safely and readily availed of when free from consequences
> or the apprehension of disclosure").

The Court emphasized the practical importance of assurance of the lawyer's

non-disclosure of confidences the lawyer learns in the course of her representation. Id. at 390,

("The observance of the ethical obligation of a lawyer to hold inviolate the confidences and

secrets of his client not only facilitates the full development of facts essential to proper

representation of the client but also encourages laymen to seek legal assistance." (quoting the

ABA Code of Professional Responsibility)).

Nor do the words "any person" overcome the force and value of the policy that the

lawyer may not reveal the confidences of her client, even though the client himself may well be

compelled to disclose them. (Their disclosure to the lawyer does not alter the client's duty to

testify truthfully).

But the rules do not say "any person, or their law firm," which is what the plaintiff wants

in this case.

The prospect that after judgment is entered the successful party could discover from the

losing attorney things that attorney had learned would inject uncertainty into the whole course of

her representation and the trial. The Upjohn Court stated that: "An uncertain privilege, or one

which purports to be certain but results in widely varying applications by the courts, is little

better than no privilege at all." Id. at 393.

3

It is not a purpose of the discovery rules to foster disputes about the boundaries of the

attorney–client privilege. As Justice Rehnquist stated in Upjohn:

> While it would probably be more convenient for the
> Government to secure the results of petitioner's internal
> investigation by simply subpoenaing the questionnaires and
> notes taken by petitioner's attorneys, such considerations
> of convenience do not overcome the policies served by the
> attorney–client privilege. As Justice Jackson noted in his
> concurring opinion in Hickman v. Taylor, 329 U.S., at 516,
> 67 S.Ct., at 396: "Discovery was hardly intended to enable
> a learned profession to perform its functions . . . on wits
> borrowed from the adversary."

Id. at 396.

The proper procedure is not an ill-conceived inquiry of defendant's attorneys seeking

information they learned in the course of the case, but to direct relevant questions to the

defendant. That straightforward process will gain the advantage that defendant's reputable

counsel will not, to their knowledge, permit dishonest answers.

The Information Subpoena served on Schulte Roth & Zabel is quashed.

So Ordered.

Dated: New York, New York
   March 22, 2022

                                Louis L. Stanton
                                LOUIS L. STANTON
                                U.S.D.J.

4